UNITED STATES, Appellee

v.

JACKIE O. WATSON, Private E–1, U. S. Army, Appellant

4 USCMA 557, 16 CMR 131

No. 3639

Decided July 16, 1954

Lt Col James C. Hamilton, U. S. Army, and 1st Lt Jack W. Tucker, U. S. Army, for Appellant.

Lt Col Paul J. Leahy, U. S. Army, Lt Col William R. Ward, U. S. Army, and 1st Lt Benjamin C. Flannagan, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

A general court-martial convened on April 7, 1953, at Munich, Germany, tried the accused under specifications alleging (1). mutiny and (2) the lifting qf a weapon against Colonel Charles Hutchings, Jr., his superior officer at the time in the execution of his office —in violation of the Uniform Code of Military Justice, Articles 94 and 90 respectively, 50 USC §§ 688, 684. The mutiny specification alleged that he:

". . . . in conjunction with Private George W. Sullivan, Jr., US Army, Company 'A', 7795 Signal Supply Control Agency and Private Robert W. Taylor, US Army, 547th Ordnance Field Maintenance Company with intent to usurp and override lawful military authority, did at 7727 United States Army Europe Retraining Center, Lechfeld, Germany, on or about 26 December 1952, create a disturbance by attempting to effect the release of a prisoner from administrative segregation, and exhorting other prisoners to join him in the disturbance."

The accused was acquitted of the assault on Colonel Hutchings, but was found guilty under the specification alleging mutiny—except for the words "and exhorting other prisoners to join him in the disturbance." The convening authority approved the findings and the sentence imposed thereon: dishonorable discharge, two years' confinement, and total forfeitures. After affirmance by an Army board of review, the accused filed in this Court a petition for review—which was granted for the purpose of determining whether

he was prejudiced (1) by the law officer's failure to instruct on riot, in violation of Article 116 of the Code, 50 USC § 710; and (2) by the occurrence of a closed conference between the law officer and court members prior to findings.

## II

The evidence revealed that on the night of December 26, 1952, a number of prisoners at the Army Retraining Center in Leichfeld, Germany, began a noisy demonstration of protest against the administrative segregation of one of the Center's inmates. After this demonstration had been in progress for some time, Colonel Hutchings, the commander of the rehabilitation agency, appeared on the scene in an' effort to quell the disturbance. Failing to restore order he departed. At last, however, a Chaplain Whittington succeeded in inducing the men to disperse and return to their barracks. At the trial Colonel Hutchings identified the accused as a ringleader of the outburst, although he denied having seen the latter raise a weapon against him. Several other prisoners testified for the Government concerning the details of the disturbance and the accused's activities at the time.

The defense countered with evidence of prior inconsistent statements from several of these witnesses, including a remark made on December 30, 1952, by Colonel Hutchings to an agent of the Criminal Investigation Division to the effect that he was unable to identify participants in the disorder. The accused himself did not take the stand.

In the course of his instructions, the law officer advised the members of the court only of breach of the peace, in violation of Article 116 of the Code, supra, as a lesser included offense. Following the charge, the court closed at 4:07 p.m., April 8, 1953, to deliberate on findings. At 4:20 p.m. the law officer and the reporter were called into the closed session for a conference—and the happenings during that meeting are described in Appellate Exhibit 1. As disclosed in that document, the president of the court initially informed the law officer that "The court has arrived at its findings." Then the following colloquy took place:

"Pres: . . . We have found the accused guilty of the specification of Charge I, a violation of the Uniform Code of Military Justice, Article 94. We have found him not guilty, but guilty of a violation of the Uniform Code of Military Justice, Article 116.

"LO: In other words, you have found the accused guilty of a breach of the peace under Article 116?

"Pres: Of riot under Article 116.

"Member: Breach of the peace is a lesser included offense of riot under 116.

"Pres: 'Any person subject to this code who causes or participates in any riot or breach of the peace shall be punished as a court-martial may direct'. The court finds that the accused did participate in a riot.

"LO: I must inform the court that riot is not a lesser included offense of mutiny. Breach of the peace is the only lesser included offense. The court may, in light of these facts, reconsider the finding, if they wish. As the specification of mutiny is alleged, riot is not a lesser included offense.

"Pres: The court did not find that the accused—the court found the accused not guilty of exhorting or leading other prisoners to join him in a disturbance, but we found that he participated in the disturbance as specified in the specification of Article 94, of which we found him guilty."

Further discussion emphasized that the court had believed that it might lawfully find the accused guilty only of participating in a riot, in violation of Article 116—and that it had done so. However, in light of the law officer's reiteration that breach of the peace constituted the only lesser offense included within mutiny, the court closed to reconsider its findings, and the law officer left the session at 4:25 p.m. When he returned at 4:55, the president informed him that the court had revoted and had found the accused guilty of having violated Article 94 of the Code, supra—an offense of which he had earlier been found not guilty.

## III

Certain prior decisions by boards of review—opinions on which the present law officer doubtless relied ██ —have held that riot may ██ not be regarded as an offense included within the crime of mutiny. United States v. McGary, 43 BR 1; United States v. Terry, 43 BR 381; United States v. Lumpkins, 44 BR 149. Other boards have ruled to the contrary. United States v. Grady [CM 366834], 13 CMR 357; United States v. Ragan [ACM 6582], 10 CMR 725. This Court has recently determined that, in a trial for mutiny, the allegations of the specification, together with the proof adduced in support thereof, may serve to raise riot as a lesser included offense. United States v. Duggan, 4 USCMA 396, 15 CMR 396; United States v. Mendiola, 4 USCMA 403, 15 CMR 403. The specification with which we are concerned here is similar in phrasing to those relied on in the Duggan and Mendiola cases—and we are sure that the doctrine of those opinions leaves no doubt that the law officer was in error when he informed the members of the court that riot could not be lesser included within the crime of mutiny as alleged in the specification before them.

Like the trials of Duggan and Mendiola, the present hearing had to do with a demonstration in an Army penal institution. However, the disturbance before us here appears distinctly to have been much less violent than those presented in the earlier cases. Moreover, Colonel Hutchings testified that the accused was "respectful" to him to the extent of addressing him as "sir"—and stated in addition that he did not recall the use of threatening gestures by the accused or any other prisoner. The Colonel added—somewhat improperly perhaps—that:

". . . In the beginning of this case I objected to the word 'mutiny', gentlemen. As far as I am concerned, there was no mutiny."

Under the circumstances, we are unable to fit the cause at bar into the pattern of the Duggan and Mendiola cases, which held that the possibility of guilt of riot was not reasonably raised by the evidence,

In those two opinions we placed reliance on the circumstance that the defense did not seriously dispute the Governor's proof of mutiny, but only sought to contend that the accused persons there had not been identified as participants therein. Here, too, the defense assailed the identification of the accused, Watson. However—as was indicated during the presentation of proof as well as in his closing argument —defense counsel maintained further that the disturbance of December 26 at no time took on the aspect of a mutiny. Thus, we cannot apply here the argument that the tactics of counsel removed all necessity that the law officer instruct to the effect that riot constituted an offense included within the mutiny charged. Therefore, we hold (1) that under certain circumstances of allegation and proof, riot may properly be deemed a lesser included offense to mutiny; (2) that the language of the specification here offers no bar to such a conclusion; and (3) that the evidence adduced at the trial of this accused served reasonably to raise the possibility of his guilt of this crime as a reasonable alternative to that charged.

## IV

It will be observed that we are not met here by a case in which the law officer only failed to instruct ██ *sua sponte* on the existence of a lesser included offense reasonably raised at the trial —which by itself would require reversal. Instead, he charged affirmatively that "riot is not a lesser included offense of mutiny." "Breach of the peace," he stated, "is the only lesser included offense." And he furnished this direction during the course of a closed session; in the absence of counsel and the accused; and after it had clearly appeared that the court desired to convict the accused of riot only and not of the mutiny charged.

In our view such an instruction would have constituted error under the allegations and facts of the instant case had it been supplied in open court. The

circumstance that it was furnished in closed session simply adds to its erroneous character. Orderly procedure demands that the defense be afforded an opportunity to develop its position with respect to such a question raised by the court, as was the case in United States v. London, 4 USCMA 90, 15 CMR 90. By charging as he did on a vital matter outside the presence of both the accused and his counsel, the law officer transgressed this requirement and deprived the accused of a valuable right. This is particularly true in the case before us because of the closeness of the legal question involved—as is evidenced by the existence of board of review precedents on both of its sides.

It is unnecessary that we consider the applicability of the doctrine of general prejudice to the present problem.

Regardless of whether the colloquy between court and law officer, set out in an earlier section of this opinion, took place in open court or in closed session, we would be required to hold that the accused was demonstrably prejudiced. No escape from this conclusion is possible—for it is undeniable that if the law officer erred, the accused was harmed. And we have held that the former was in error.

## V

It follows from what has been said that the decision of the board of review must be reversed and a rehearing ordered. The record is returned to The Judge Advocate General, United States Army, for appropriate action.

Chief Judge QUINN and Judge LATIMER concur.